## Union Coal Company, Appellant, *v.* Cooner.

*Taxation—Assessments—Triennial assessments—Omission of property—Act of April 28, 1868, P. L. 105.*

Where taxable property has been omitted from a triennial assessment, such property may be included in an assessment made in the following year, although there may have been no erections, additions or improvements made since the triennial assessment.

*Taxation—Assessments—Notice of assessments.*

A corporation cannot complain that it had no notice of an increase in the amount of the assessment of its property paid one year after the triennial assessment, where it appears that notice of such assessment was given to a person representing the corporation and other companies in the matter of the taxes, and that such person met the county commissioners at a meeting where the assessment was discussed.

Argued Oct. 28, 1904.     Appeal, No. 187, Oct. T., 1904, by plaintiffs, from decree of C. P. Northumberland Co., Equity Docket No. 241, dismissing bill in equity in case of the Union Coal Company and Shamokin Valley and Pottsville Railroad Company, Appellants, v. A. H. Cooner, W. H. Rohrbach and G. W. Raudenbush, commissioners of Northumberland county; John P. Forbes, collector of county, school and building taxes for the township of Coal for the year 1901; Jacob Fleming, John Strausser, Peter Welter, Thomas J. Burke, George Miller and William Summers, commissioners of the township of Coal; Charles Krzykwa, treasurer of the township of Coal and collector of road taxes of the said township; Francis Sands, Benjamin F. Culp, George Hancock, George Landau, Thomas Filer and Albert Delong, school directors of Coal township; and Henry Parry, Henry H. Keiser and William W. Eddy, directors of the poor of Coal township poor district, and Thomas R. Jones, collector of poor taxes for the said poor district of Coal township. Before RICE, P. J., BEAVER, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Bill in equity to enjoin the collection of an alleged illegal tax. Before AUTEN, J.

*Error assigned* among others was decree dismissing the bill.

*S. P. Wolverton,* with him *J. C. Bucher,* for appellants.—The additional assessment, made in 1901, was illegal: Del. & Hudson Canal Co. v. Walsh, 11 Phila. 587.

*Fred B. Moser* and *William W. Ryon,* with them *Charles C. Lark* and *John I. Welsh,* for appellees.—Although the commissioners may have exempted property at the triennial assessment, this does not preclude them from afterwards adding it to the assessment, if they find it is taxable: Moravian Sem-

inary v. Commissioners, 2 Lanc. Law Rev. 28 ; Moore v. Taylor, 147 Pa. 481 ; Greenough v. Fulton Coal Co., 74 Pa. 486 ; Miles v. Del. & Hudson Canal Co., 140 Pa. 623 ; Logan v. Washington County, 29 Pa. 373 ; D., L. & W. R. R. Co. v. Sanderson, 109 Pa. 583 ; Woodward v. D., L. & W. R. R. Co., 121 Pa. 344; Sanderson v. Scranton, 105 Pa. 469.

OPINION BY BEAVER, J., January 17, 1905 :

Our general scheme of taxation in Pennsylvania aims not only to secure uniformity upon the same class of subjects within the territorial limits of the authority levying the tax, as required by the constitution, but also that each taxable shall bear his ratable proportion of the taxes so levied.

The Shamokin Valley & Pottsville Railroad Company, one of the plaintiffs, was the owner of certain tracts of coal land within the county of Northumberland. The Mineral Railroad & Mining Company acquired the mining rights upon these lands, upon which were located the Hickory Ridge and Hickory Swamp collieries, and it, in turn, leased the lands, including the collieries above mentioned, to the Union Coal Company, the other plaintiff.

In the lease, under which the Union Coal Company operates, it stipulates " to pay all United States, state, county, township, school, district and other taxes, whether municipal or otherwise, which may be imposed or levied upon any coal mined from the demised premises, or upon the lands, dwellings, buildings, fixtures and improvements erected, or to be erected, by the said party of the second part (plaintiff) or used under this indenture, and to furnish satisfactory evidence of such payments to the party of the first part; and, if such land, coal or improvements be assessed to the party of the first part, then to repay to the party of the first part the sum so assessed and paid." Under this lease there was a division between the land itself and the improvements thereon erected by the Union Coal Company, plaintiff. No question is raised as to the right of the taxing authority to make such a division.

In the year 1900, the assessor of the township in which the premises were located made the triennial assessments upon the improvements belonging to the Union Coal Company at the Hickory Ridge and Hickory Swamp collieries, as itemized, ag-

gregating $14,761. The following year (1891) another assessor added to the assessment at the Hickory Ridge colliery: breaker and fixtures, $8,000 ; six instead of three pumps inside, $600, instead of $300 ; and at the Hickory Swamp colliery, three pumps inside, $300 ; two pumps outside, $200, making an increase in the valuation of the property assessed to the said plaintiff of $8,800, the assessment of the property in that year aggregating $23,561, which was reduced, however, by striking from the assessment an office and stable valued at $250.

The general question raised by the record is, was the additional assessment, made in the year 1901, lawful?

1. It is claimed that the assessment was made because of property which had been omitted at the triennial assessment, and that the same is justified under the provisions of the Act of April 28, 1868, P. L. 105, which provides : " That, whenever any taxable real estate shall be omitted to be assessed. at the triennial assessment, the assessor, on notice hereof, shall forthwith assess and return the same to the proper office, which assessment shall be subject to appeal, and shall continue until the next triennial assessment and its proper proportion of all taxes to which such real estate is liable, levied after such assessment shall be laid thereon."

The requests of the plaintiffs for findings of fact and the answers thereto by the court below indicate the pinch of the case, so far as this portion of it is concerned. They were :

"Seventh. That the assessor for the year 1901 had no jurisdiction or authority in law to reassess any of. the property valued and returned by the triennial assessor, except in cases where there has been additions made thereto or improvements made after the triennial assessment of the fall of 1900. *Answer*: Affirmed. He has no authority to reassess.

"Eighth. That the raising of the valuation by James Madden, annual assessor for 1901, from $8,550, the valuation of the property as returned by the triennial assessor, to $23,311, was without authority in law and void. *Answer*: Refused. Madden did not increase the valuation on property assessed and returned by Lynch ; the increased valuation is on property not assessed and returned by Lynch."

It perhaps should be said that the figures contained in the eighth request for finding, above referred to, are not correct.

The change was not made from $8,550, to $23,311, but the change is clearly indicated, as we have stated above, in the eighth request for finding by the defendants, in which it is shown, by an exact calculation, that the increase at both collieries was from $14,761 to $23,311, adding the items hereinbefore specified and deducting an office and stable assessed by the triennial assessor at $250, the court finding as a fact (see the latter part of its eighth finding of fact) that the " additional assessment for the year 1901 at the said collieries was made up of property which had not been assessed by the triennial assessor of 1900 and that the annual assessor of 1901 did not increase the valuation on either the land assessed to the Shamokin Valley & Pottsville Railroad Company or the other property assessed to the Union Coal Company by the triennial assessor of 1900." This finding is clearly justified by a reference to the lithographic copies of the assessments, as contained in the paper-book of the appellants and the testimony of the assessors in relation thereto.

We are of the opinion that the authority for such an assessment is found in the provisions of the act of 1868, above referred to, and that, in making the increase of the aggregate amount of taxation, by reason of the addition of items which had not been included in the assessment theretofore, the assessor was acting within the limits of his authority, notwithstanding the fact that there had been no new erections at either of the collieries between the time that the triennial assessment was made in 1900 and the one following it in 1901. In this respect the act of 1868 seemed to remedy a defect in the Act of April 10, 1849, P. L. 570, in which the assessors were " authorized and directed to re-assess between the periods of the triennial assessments all real estate which may have been improved by the erection of buildings or other improvements subsequent to the last preceding triennial assessment."

2. Were the steps subsequent to the assessment regular and such as to bring home notice to the plaintiffs of the increase in the assessment complained of ? The plaintiffs allege that they received no notice of the increase in the amount of the assessment and of the time of appeal. Considerable testimony was taken upon that subject. A. W. Rhoads was called as a witness by the plaintiffs and testified :-

"I was to look after the taxes and taxation of the lands generally in connection with those companies. 'Q. Did you receive any notice of appeal from the assessment against the Union Coal Company, or of the day fixed for appeals? A. Especially for the Union Coal Company, do you mean? Q. Yes, sir. A. No, sir.'" Mr. Ryon, on cross-examination: "Q. Who did? A. I am unable to say. Q. You got the notice of the day on which the appeal was to be held? A. I understood it to be a general appeal for the corporations, an oral notice. Q. The Union Coal Company, is a corporation? A. Yes, sir; I asked whether it was especially for the Union Coal Company, and, if that is the question, I did not. But generally for the corporations I did receive information. Q. For all the corporations? A. Yes, sir."

The assessor or his clerk testified that he had mailed a notice to Mr. Rhoads at Wilkes-Barre, as he had been directed by him to do. It was also in evidence that Mr. Rhoads appeared at the appeal and subsequently negotiated for the reduction of these taxes of the Union Coal Company. So far as we are able to see, therefore, the court was justified in affirming the defendants' eleventh request for finding of fact, namely: "XI. That A. W. Rhoads represented the Union Coal Company, and received information of the time set for appeals for coal townships, for the year 1901, and attended the said appeals and that no reduction in the valuation of property of the Union Coal Company was asked for at the said appeals; that subsequently, to wit, July 24, 1901, the representatives of the said Union Coal Company, met the county commissioners and annual assessor for 1901 in the office of the Mineral Railroad & Mining Company, at Shamokin, Pa., where these particular assessments were referred to, and no reduction asked for; that the county commissioners afterwards refused to make any reductions in the assessment of the Union Coal Company."

3. In view of the conclusion which we have reached in regard to the authority of law for making the assessment and the legality of the manner in which it was made, and of the subsequent steps relating thereto, it is not necessary to discuss the question as to whether or not the bill in equity filed in this case could be sustained on technical grounds.

There are thirty-six several assignments of error. The most

of them cover specific exceptions to the findings of fact, based upon the requests of both plaintiffs and defendants and upon the conclusions of law reached by the court below. · What we have said, however, covers the main points in the case and it is, therefore, unnecessary to discuss the assignments of error seriatim.

The decree of the court· below is affirmed and the. appeal dismissed at the cost of the appellants.